UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FIRST AND STEWART HOTEL OWNER, LLC, a Delaware limited liability company,

        *Plaintiff*,

v.

FIREMAN'S FUND INSURANCE COMPANY, a California corporation,

        *Defendant*.

CASE NO. 2:21-cv-00344-BJR

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

## I.    INTRODUCTION

Before the Court is Defendant's Motion to Dismiss Plaintiff's claims. Def.'s Rule 12(c) Mot. to Dismiss Pl.'s Am. Compl., Dkt. No. 19 ("Mot.").[1] Having reviewed the Motion, the oppositions thereto, the record of the case, and the relevant legal authorities, the Court will grant

---

[1] Plaintiff has requested oral argument. *See* Pl.'s Opp'n to Def.'s Rule 12(c) Mot. to Dismiss Pl.'s Am. Compl., Dkt. No. 27 ("Resp."). The Court determines that oral argument is unnecessary to resolve the Motion and will, therefore, deny the request. *See* Local Rules W.D. Wash. LCR 7(b)(4) ("Unless otherwise ordered by the court, all motions will be decided by the court without oral argument.").

1

Defendant's Motion.

## II.   BACKGROUND

This is one amongst a multitude of cases across the United States in which a business seeks coverage from its insurance company for income lost due to the COVID-19 pandemic. *See* Compl., Dkt. No. 1-1. This District has chosen to assign all such cases to the undersigned who consolidated the earliest of these actions into ten cases. *See, e.g.*, *Chorak v. Hartford Cas. Ins. Co.*, No. 20-cv-00627, 2020 WL 8611291 (W.D. Wash. Nov. 10, 2020). This Court recently published an Order in those cases holding there was no coverage for losses due to COVID-19. *See Nguyen v. Travelers Cas. Ins. Co.*, No. 20-cv-00597, 2021 WL 2184878 (W.D. Wash. May 28, 2021) ("Order on Consolidated Cases").

In that Order, the Court held that all of the relevant policies required "direct physical loss of or damage to" covered property to trigger coverage and COVID-19 did not cause such physical loss or damage. *Id.* at *9–13. Additionally, the Court held that extension provisions, such as Extra Expense or Civil Authority, failed to provide independent grounds for coverage where coverage was not triggered in the first instance. *Id.* at *13–14. The Court addressed the claims of businesses who, like Plaintiff in this case, sought coverage under a policy issued by Fireman's Fund. *Id.* at *26. In finding that the policies did not provide coverage, the Court examined unique Crisis Event Business Income, Communicable Disease Coverage, Dependent Property Coverage, and Business Access Coverage provisions—several of which Plaintiff here invokes—and found the provisions failed to offer independent grounds for coverage. The Court recently affirmed these holdings in an Order on Motion for Reconsideration brought by several Fireman's Fund plaintiffs. *See Vita Coffee LLC v. Fireman's Fund Ins. Co.*, Order on Mot. for Recons., 20-cv-01079, Dkt. No. 85

("Order on Mot. for Recons.").

## III. DISCUSSION

This case was filed after consolidation, and thus was not included in the Court's Order on Consolidated Cases. Plaintiff's Amended Complaint points to several provisions in its relevant insurance policies[2] as grounds for coverage. *See* Am. Compl., Dkt. No. 19 ¶¶ 134 (Business Income and Extra Expense Coverage); 144 (Communicable Disease Coverage); 146–47 (Dependent Property Coverage); 150 (Civil Authority Coverage); 152 (Business Access Coverage); 154 (Loss Avoidance or Mitigation Coverage); 156 (Extended Business Income and Extra Expense Coverage).

As the Court has already ruled, these provisions all require that coverage be triggered by direct physical loss or damage to covered property (or nearby property) in the first instance. *See* Policy at 29 (Business Income and Extra Expense Coverage); 44–45 (Communicable Disease Coverage); 41 (Dependent Property Coverage); 41 (Civil Authority Coverage); 41 (Business Access Coverage); 38 (Loss Avoidance or Mitigation Coverage); 42 (Extended Business Income and Extra Expense Coverage); *see also id.* at 75 (defining "covered cause of loss").[3] Given the Court's conclusion that COVID-19 does not cause physical loss or damage, these provisions fail

---

[2] The Parties' insurance agreement spans two policy periods and is contained in two separate policies. The first policy covers April 8, 2019 to April 8, 2020, *see* Decl. of Anthony Todaro, Ex. A, Dkt. No. 26-1 ("Policy"), and the second covers April 8, 2020 to April 8, 2021, *id.*, Ex. B, Dkt. No. 26-2. These policies are identical in their relevant aspects, except that they contain slightly different policy limits, and the Parties treat the common terms found in each policy interchangeably in advancing their arguments. *See, e.g.*, Am. Compl. ¶ 1; Mot. at 4. The Court, therefore, will cite only the first policy when describing the agreement's terms. *See* Policy. Additionally, as the policy uses an inconsistent numbering scheme, the Court will consistently refer to the page numbers derived from the file uploaded to the Court's Case Management/Electronic Case Files system.

[3] The Court has provided excerpts of the relevant policy provisions in Appendix A included at the end of this Order.

to provide coverage.

## IV. FIRST AND STEWART'S ARGUMENTS

Plaintiff claims that there are two grounds that distinguish its case from those previously decided by the Court.[4] First, that its policy contains an applicable Communicable Disease Coverage provision and, second, that its Amended Complaint is unique because it relies on "extensive reference to the latest scientific findings" to show that COVID-19 causes actual property loss—rather than mere economic loss—by "physically altering indoor air." Resp. at 1. The Court is unpersuaded by these arguments.[5]

### A. Communicable Disease Coverage Provision

Plaintiff claims coverage pursuant to the Communicable Disease Coverage provision[6] in

---

[4] Plaintiff reiterates several arguments already rejected by this Court. *See* Resp. at 4–5 (claiming Washington precedents support finding physical loss or damage); *but see* Order on Consolidated Cases at *12–13 (examining Washington precedents and determining that the "Washington Supreme Court would decide that the term 'physical loss' requires dispossession of property"); Order on Mot. for Recons. at 6–8 (confirming the same); *see also* Resp. at 8–10 (arguing the documented actual presence of COVID-19 on the premises shows physical loss or damage); *but see* Order on Consolidated Cases at *11 (concluding that pleading actual presence is immaterial because COVID-19 harms people not property); Order on Mot. for Recons. at 13 (confirming the same); *see also* Resp. at 12–13 (claiming coverage under Civil Authority Coverage provision); *but see* Order on Consolidated Cases at *14 (rejecting coverage under similar Civil Authority Coverage provisions). To the extent that Plaintiff repeats arguments already ruled on by the Court, the Court adheres to its previous rulings.

[5] Nor does the Court find convincing arguments that physical loss or damage is achieved by alterations to physical property made by Plaintiffs to mitigate the presence of the disease, such as installation of air filters or barriers. *See, e.g.*, Resp. at 6 ("Attempting to make property exposed to Coronavirus safe thus requires numerous physical alterations to property . . . ."). In order to trigger coverage under Plaintiff's policies, the physical damage (or alterations) must be caused by the covered event, not by the policyholder. Policy at 29 ("[W]e will pay for the actual loss of business income and necessary extra expense you sustain due to the necessary suspension of your operations during the period of restoration arising from direct physical loss or damage to property at a location, or within 1,000 feet of such location, *caused by or resulting from* a covered cause of loss.") (emphasis added). Plaintiff's Loss Avoidance or Mitigation Coverage provision does not alter this conclusion as it covers mitigation efforts related to a "covered loss or damage," which the Court has determined COVID-19 is not. *See* Appendix A.

[6] *See* Appendix A.

4

its policies, pointing out that COVID-19 is unquestionably a communicable disease. *See* Am. Compl. ¶¶ 10, 47, 144–45; Resp. at 10–11, 13–14; *see also* Policy at 75.[7] This Provision is triggered, Plaintiff argues, because Plaintiff has pled the actual presence of COVID-19 on its premises through the confirmed cases of at least four employees and based on the statistical likelihood that additional cases on its premises went undetected. *See* Am. Compl. ¶¶ 31, 34, 42–43, 99–100, 106.

The Court addressed the same Fireman's Fund Communicable Disease Coverage provision—and arguments identical to Plaintiff's—in its Order on Consolidated Cases. *See* Order on Consolidated Cases at *28. As the Court explained in that Order, the Communicable Disease Coverage provision expressly incorporates the requirement for physical loss or damage, which COVID-19 does not cause, even when on the premises. *See* Policy at 44 ("We will pay for *direct physical loss or damage* to Property Insured caused by or resulting from a covered communicable disease event at a location . . . .") (emphasis added).

Furthermore, the Provision requires that operations be suspended as a result of a specific communicable disease event at the premises that forces a public health authority to close the property. Policy at 44, 75 (covering physical loss or damage "caused by or resulting from a covered communicable disease event" and defining a "communicable disease event" as "an event in which a public health authority has ordered that a location be evacuated, decontaminated, or disinfected due to the outbreak of a communicable disease at such location"). As this Court

---

[7] Defining "communicable disease" as "any disease, bacteria, or virus that may be transmitted directly or indirectly from human or animal to a human."

5

concluded, there was no coverage as "no public health authority issued an order specifically evacuating [the plaintiff's] premises in order to decontaminate or disinfect a known outbreak." Order on Consolidated Cases at * 28. The Court's reasoning applies to Plaintiff here.

### B. Physical Alteration of Indoor Air

Plaintiff asserts that its claims are different from those previously addressed by the Court in that it has gathered voluminous medical and academic literature attesting to the fact that COVID-19 is transmissible through the air and, consequently, Plaintiff argues, the air inside its premises is physically altered causing physical loss and damage. *See* Resp. at 2–3, 5–6; Am. Compl. ¶¶ 71–98.[8] Plaintiff claims this argument is supported by a minority line of cases in which courts have determined that hazardous airborne substances—such as asbestos, ammonia, or noxious fumes—can trigger property coverage. Resp. at 7–8.

The Court finds this contention unpersuasive. Air is not covered property and, therefore, its alteration cannot constitute physical loss or damage. Plaintiff's policies affirmatively define Property Insured to cover only real property. Policy at 82 (defining "Property Insured" as "business real property, business personal property, or both"). To make this even more explicit, the policies exclude air as covered property. Policy at 29 (stating in Property Not Insured provision

---

[8] The Court examined similar claims regarding the science of COVID-19's transmissibility in its recent Order on Motion for Reconsideration. *See* Order on Mot. for Recons. at 9–10. In that case, the plaintiffs claimed that in its Order on Consolidated Cases the Court overlooked scientific research showing that COVID-19 can be transmitted when virus-containing droplets land on business property with which humans subsequently come into contact. The Court rejected those claims, ruling that even accepting the allegations as true, such transmission only shows harm to the person to whom the virus is transmitted, not the property. To the extent that Plaintiff in this case advances the same arguments regarding transmission through inanimate business property—*see, e.g.*, Resp. at 2 ("As [Plaintiff] pleads in detail, risk of infection by Coronavirus, which causes COVID-19, renders indoor air, *objects, surfaces, and other areas exposed to the virus* dangerous and potentially fatal.") (emphasis added)—the same conclusion applies.

"[t]his Coverage Form does not insure any of the following property: . . . air"). Claims based on physical alteration of air are not covered.

Analogizing COVID-19 to other hazardous airborne substances does not alter this conclusion. In making this analogy, Plaintiff relies on a line of cases from out-of-jurisdiction courts which have held that, in some circumstances, hazardous airborne substances can cause physical loss or damage. *See Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 236 (3d Cir. 2002) (holding that the actual presence of asbestos in a building could constitute physical loss where asbestos was present and airborne in such quantities as "to make the structure uninhabitable and unusable"); *Or. Shakespeare Festival Ass'n v. Great Am. Ins. Co.*, No. 15-cv-01932, 2016 WL 3267247 (D. Or. June 7, 2016) (wildfire smoke and ash), *vacated*, No. 15-cv-01932, 2017 WL 1034203 (D. Or. Mar. 6, 2017); *W. Fire Ins. Co. v. First Presbyterian Church*, 437 P.2d 52 (Colo. 1968) (gasoline fumes); *Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 12-cv-04418, 2014 WL 6675934 (D.N.J. Nov. 25, 2014) (ammonia). This argument has been addressed by courts across the country examining COVID-19, business property insurance, and physical loss and damage, which have nearly uniformly rejected the comparison. *See, e.g.*, *Kim-Chee LLC v. Phila. Indem. Ins. Co.*, No. 20-cv-1136, 2021 WL 1600831, at *5–6 (W.D.N.Y. Apr. 23, 2021); *Colgan v. Sentinel Ins. Co.*, No. 20-cv-04780, 2021 WL 472964 *3 n.4 (N.D. Cal. Jan. 26, 2021); *4431, Inc. v. Cincinnati Ins. Co.*, 504 F. Supp. 3d 368, 383–86 (E.D. Pa. 2020).

First, there is no indication the either the Ninth Circuit or Washington state caselaw has accepted the view that a "source[] unnoticeable to the naked eye"—such as asbestos—may cause physical loss of covered property. *Port Auth.*, 311 F.3d at 235–36. On the other hand, the Ninth

7

Circuit has previously rejected a claim that the discovery of asbestos in a building constituted physical loss where the "building remained physically unchanged." *Great N. Ins. Co. v. Benjamin Franklin Fed. Sav. & Loan Ass'n*, 953 F.2d 1387 (9th Cir. 1992) ("While [plaintiff] no doubt sustained consequential loss caused by the necessity of cleaning up the asbestos, we conclude that it did not sustain 'direct physical loss.'").

Furthermore, even accepting this line of cases, the majority of courts looking at this question have held COVID-19 does not cause the sort of all-encompassing loss *Port Authority* equated with physical damage. *See, e.g.*, *Moody v. Hartford Fin. Grp., Inc.*, No. 20-cv-2856, 2021 WL 135897, at *6 (E.D. Pa. Jan. 14, 2021) ("Neither the presence of the virus nor an imminent threat thereof . . . has 'nearly eliminated or destroyed' the property's functionality or rendered it 'useless or uninhabitable.'" (quoting *Motorists Mut. Ins. Co. v. Hardinger*, 131 F. App'x 823, 826–27 (3d Cir. 2005))). Unlike the hazardous airborne substances on which this line of cases focuses, "coronavirus poses a temporary health hazard to the occupants of a building, whose threat to human health dissipates with the passage of time." *Buffalo Xerographix, Inc. v. Sentinel Ins. Co.*, No. 20-cv-520, 2021 WL 2471315, at *4 (W.D.N.Y. June 16, 2021). Unlike such substances as asbestos or noxious, poisonous gases, COVID-19 "can be disinfected and cleaned" without resort to abatement efforts akin to asbestos. *Out W. Rest. Grp. Inc. v. Affiliated FM Ins. Co.*, No. 20-cv-06786, 2021 WL 1056627, at *5 (N.D. Cal. Mar. 19, 2021) (quoting *O'Brien Sales & Mktg., Inc. v. Transp. Ins. Co.*, No. 20-cv-02951, 2021 WL 105772, at *4 (N.D. Cal. Jan. 12, 2021).

Plaintiff in essence seeks to recover economic losses resulting from the Governor's curtailment of certain businesses and business operations. Property insurance—such as the policies at issue here—is meant to cover the efforts and period of time necessary to restore a

business to working order.  *See* Policy at 29 (Business Income and Extra Expense provision providing coverage "during the period of restoration").[9]  Here, the presence of COVID-19 on Plaintiff's property did not cause damage to the property necessitating rehabilitation or restoration efforts similar to those required to abate asbestos or remove poisonous fumes which permeate property.  Instead, all that is required for Plaintiff to return to full working order is for the Governor to lift the decrees and restrictions.  *See* Order on Mot. for Recons. at 12 (first citing *Star Buick GMC v. Sentry Ins. Grp.*, No. 20-cv-03023, 2021 WL 2134289, at *6 (E.D. Pa. May 26, 2021); and then citing *Hair Studio 1208, LLC v. Hartford Underwriters Ins. Co.*, No. 20-cv-2171, 2021 WL 1945712, at *9 (E.D. Pa. May 14, 2021)).  Plaintiff has not demonstrated a contamination rendering the property's function "nearly eliminated or destroyed, or the structure . . . made useless or uninhabitable . . . ."  *Port Auth.*, 311 F.3d at 236.  Therefore, there has been no physical loss or damage.

## V.     CONCLUSION

Based on the foregoing, the Court hereby GRANTS Defendant's Motion and dismisses Plaintiff's claims with PREJUDICE.

DATED this 22nd day of July, 2021.

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE

---

[9] *See also* Policy at 81 (defining "period of restoration" as "begin[ning] immediately after the time of direct physical loss or damage caused by a or resulting from a covered cause of loss to property" and ending "the earlier of: (1) the date when such property at the location should be repaired, rebuilt, or replaced with reasonable speed and like kind and quality; or (2) The date when business is resumed at a new permanent location.").

# Appendix A

II. Business Income and Extra Expense Coverage

    A. If a Limit of Insurance for Business Income and Extra Expense is shown in the Declarations, then we will pay for the actual loss of business income and necessary extra expense you sustain due to the necessary suspension of operations during the period of restoration arising from *direct physical loss or damage* to property at a location, or within 1,000 feet of such location, caused by or resulting from a covered Cause of Loss.

1. Communicable Disease Coverage

    a. (1) We will pay for *direct physical loss or damage* to Property Insured caused by or resulting from a covered communicable disease event at a location including the following necessary costs incurred to: . . .
(2) If the Declarations show a Limit of Insurance for Business Income and Extra Expense Coverage, then we will pay for the actual loss of business income and necessary extra expense you sustain due to [t]he [sic] necessary suspension of operations during the period of restoration[.] [sic] The suspension must be due to *direct physical loss or damage to property* at a location caused by or resulting from a covered communicable disease event.

4. Dependent Property Coverage

    a. Dependent Property Coverage
(1) We will pay for the actual loss of business income and necessary extra expense you sustain due to the necessary suspension of operations during the period of restorations at a location.
(2) The suspension must be due to *direct physical loss or damage* at the location of a dependent property, situated inside or outside of the Coverage Territory, caused by or resulting from a covered cause of loss.

1. Business Access Coverage

    a. We will pay for the actual loss of business income and necessary extra expense you sustain due to the necessary suspension of operations at a location if access to such location is impaired or obstructed. Such impairment or obstruction must: (1) Arise from *direct physical loss or damage* to property other than at such locations; and (2) Be caused by or result from a covered cause of loss; and (3) Occur within the number of miles stated in the Declarations from such location.

9. Loss Avoidance or Mitigation Coverage

    a. We will pay the necessary expense you incur to protect, avoid, or significantly mitigate potential *covered loss or damage* that is actually and imminently threatening Property Insured, including: (1) Removal of ice or snow from the roof or balconies of business real property that has accumulated during and due to a storm; (2) Pumping of standing water away from business real property that has accumulated during and due to a flood, hurricane, named storm, or storm; (3) Application of fire retardant foam or similar fire suppressing or extinguishing material to business real property as protection against an approaching fire; and (4) Boarding up or sandbagging of doors, windows, or other external openings in business real property as protection against approaching flood, hurricane, named storm, or storm. However, we will not pay for any loss, damage, or extra expense caused by or resulting from such loss prevention actions.

6. Extended Business Income and Extra Expense

    a. If a *business income and extra expense loss is covered under this Coverage Form*, then subject to the Limit of Business Income and Extra Expense Coverage: (1) We will pay . . .

13. Covered cause of loss means risks of *direct physical loss or damage* not excluded or limited in this Coverage Form.

    *All emphasis in the proceeding excerpts is added by the Court.